J-S58018-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MARK M. FISHER, | |
| Appellant | No. 1992 WDA 2013 |

Appeal from the PCRA Order Entered November 25, 2013
In the Court of Common Pleas of Washington County
Criminal Division at No(s): CP-63-CR-0002149-2007

BEFORE: GANTMAN, P.J., BENDER, P.J.E., and PLATT, J.[*]

MEMORANDUM BY BENDER, P.J.E.: **FILED SEPTEMBER 26, 2014**

Appellant, Mark M. Fisher, appeals from the trial court's November 25, 2013 order denying his petition for relief filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. Appellant raises nine claims of ineffective assistance of counsel (IAC). After careful review, we affirm.

Following a jury trial in September of 2008, Appellant was convicted of second-degree murder, two counts of robbery, burglary, aggravated assault, unlawful restraint, false impersonation of a private employee, reckless endangerment, and conspiracy.

> Appellant's convictions stem[med] from his participation in a criminal event that occurred on January 29, 2003. At

_____

[*] Retired Senior Judge assigned to the Superior Court.

approximately 1:00 p.m. on the day in question, Thomas Miller, a retired customer service representative for Equitable Gas Company, observed three males who appeared to be about twenty years old and who were wearing outdated Equitable Gas Company attire. They were walking up the driveway of the residence of Shannon and Freda Dale on 613 Venetia Road, Venetia, Washington County. Mr. Dale was eighty-nine years old, and Mrs. Dale was ninety years old.

Mr. Dale was standing outside his home when he was approached by a Caucasian male who was wearing the vest of a utility worker and was between thirty to forty years old. Mr. Dale allowed the man into his home after the man said that he was employed by the gas company and needed to enter the house to perform work. When Mr. Dale entered his house, he saw three other men assaulting his wife. Mr. Dale and his wife were bound with duct tape. Mr. Dale then was struck repeatedly on the head and face, kicked in the torso, and had his finger twisted so that he would respond to questioning about the location of his money. The four men proceeded to ransack the Dale home.

At approximately 3:00 p.m., Julia Heppner, a caregiver to the Dales, arrived at the residence. The garage door was open[], and Mrs. Dale's purse was open[] on the kitchen table and [the] contents had been removed from that item. As Ms. Heppner looked into the hallway adjacent to the kitchen, she saw Mrs. Dale lying on the floor bound by duct tape. Ms. Heppner began to search for a telephone when she heard Mr. Dale cry for help. She found Mr. Dale badly beaten. The telephone had been pulled from the wall, so Ms. Heppner drove to a nearby store and telephoned police from that location.

Peters Township Police Sergeant Donald E. Heinlein and Peters Township Police Officer Brian Barbour responded to the call. At that time, there was a substantial amount of snow on the ground. When the police officers arrived, they discovered that Mrs. Dale was dead. The coroner testified that she died from a heart attack that was caused by the attack. Mr. Dale was bleeding from his face, had cuts and bruises on his face, and had bruising in his right rib area. Brian Shugar, the EMS supervisor who arrived at the scene shortly after the police, stated that Mr. Dale appeared severely beaten and that Mr. Dale told Mr. Shugar that he had been hit in the head as well as kicked in the chest. Mr. Dale was transported to the hospital where it was discovered that three teeth had been knocked from his upper denture plate,

and he had sustained a significant injury to his right eye, a fractured rib, a twisted and swollen finger, and multiple prick-like injuries on his lower legs.

Sergeant Heinlein and Officer Barbour found that the Dale house, which was always very tidy, had been ransacked. All of the drawers were pulled from furniture located in the bedroom and dining room. The contents of the dining room drawers had been riffled through and thrown into a large pile on the floor. Appellant's thumbprint was discovered on an envelope in that pile of paper. The duct tape that had bound the decedent's ankles contained her DNA as well as DNA of a male. The male DNA could not be excluded as belonging to Appellant in that only one in 14,000 individuals in the Caucasian population would be expected to be included as a potential contributor to the mixture of DNA contained on the duct tape that bound Mrs. Dale. Six days after the crime, the snow had melted, and police discovered a cigarette butt just outside the Dale home. Police ascertained that neither the Dales[,] nor did anyone who came to their house[,] smoked. Therefore, police took the burnt cigarette and had it tested for DNA. DNA was recovered from the butt, and it perfectly matched Appellant's DNA. Appellant was nineteen years old on the day of the incident.

Mr. Dale died on February 7, 2008. Prior to his death, he indicated that he could identify the perpetrator who approached him on January 29, 2003. Police showed him a photographic array on March 19, 2003, and he chose the picture of a man named Michael Marks as that man. Mr. Marks was initially charged in connection with this crime, but when no other evidence was found to link him to the incident, those charges were withdrawn. At trial, Appellant presented an alibi defense. His mother and sister-in-law testified that he was in Texarkana, Arkansas, on January 29, 2003.

*Commonwealth v. Fisher*, No. 49 WDA 2009, unpublished memorandum at 1-4 (Pa. Super. filed June 7, 2010) (footnote omitted).

After Appellant was convicted of the above-stated offenses, he was sentenced to an aggregate term of life imprisonment without the possibility of parole. Appellant filed a timely notice of appeal and, after this Court

affirmed his judgment of sentence, our Supreme Court denied his petition for allowance of appeal on February 9, 2011. *Commonwealth v. Fisher*, 6 A.3d 547 (Pa. Super. 2010) (unpublished memorandum), *appeal denied*, 15 A.3d 489 (Pa. 2011).

Appellant filed a timely counseled PCRA petition on February 8, 2012, raising nine IAC claims involving the representation of his trial counsel, Glenn Alterio, Esq. On February 6, 2013, the PCRA court conducted an evidentiary hearing, at which Attorney Alterio and Appellant testified. On November 26, 2013, the court issued an order denying Appellant's PCRA petition. He filed a timely notice of appeal and, herein, he raises the following nine issues for our review:

> A. Did the PCRA [c]ourt err in failing to find that [t]rial [c]ounsel rendered [IAC] when he failed to request a jury instruction informing the jury on the manner in which they should consider the presentation of DNA evidence?
>
> B. Did the PCRA [c]ourt err in failing to find that [t]rial [c]ounsel rendered [IAC] in failing to request a line-up involving [Appellant] and, thereby, deprived [Appellant] of a fair trial?
>
> C. Did the PCRA [c]ourt err in failing to find that [t]rial [c]ounsel rendered [IAC] in failing to preserve the testimony of Mr. Dale as to the identification of the actual perpetrator where the failure resulted in the exclusion of material evidence indicating that Mr. Dale had specifically identified Michael Marks[], rather than [Appellant], as a perpetrator?
>
> D. Did the PCRA [c]ourt err in failing to find that [t]rial [c]ounsel rendered [IAC] when he failed to request a continuance of trial and obtain the services of an expert in the fields of DNA analysis and fingerprint identification?
>
> E. Did the PCRA [c]ourt err in failing to find that [t]rial [c]ounsel rendered [IAC] in failing to object or file a motion in limine to

preclude the hearsay testimony of Sergeant Kevin Kolson concerning Shannon Dale's account of the incident which did not fit within any exception to the hearsay rule?

F. Did the PCRA [c]ourt err in failing to find that [t]rial [c]ounsel rendered [IAC] in failing to object or in failing to file a motion in limine to preclude the hearsay statements of Mr. Dale brought in through Sergeant Kevin Kolson, the admission of which were in violation of the Confrontation Clause, Sixth Amendment[] of the United States Constitution and Article 1, § 9 of the Pennsylvania Constitution?

G. Did the PCRA [c]ourt err in failing to find that [t]rial [c]ounsel rendered [IAC] by failing to argue that the out-of-court statement of Shannon Dale, concerning his identification of Michael Marks, was admissible pursuant to the Due Process exception to the hearsay rule?

H. Did the PCRA [c]ourt err in failing to find that [Appellant] was denied effective assistance of counsel when [t]rial [c]ounsel failed to object to misleading questions by the Assistant District Attorney when he asked [Appellant's] alibi witnesses about their failure to immediately notify law enforcement officers they were with [Appellant] on the date of the crime?

I. Did the PCRA [c]ourt err in failing to find that [Appellant] was denied effective assistance of counsel when [t]rial [c]ounsel failed to object when the Assistant District Attorney cross[-]examined alibi witness, Karyl Fisher[,] about her conviction for hindering the apprehension of a criminal in that the offense was not crimen falsi?

Appellant's Brief at 3.

Before delving into Appellant's issues, we note that "[t]his Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error." **Commonwealth v. Morales**, 701 A.2d 516, 520 (Pa. 1997) (citing **Commonwealth v. Travaglia**, 661 A.2d 352, 356 n.4 (Pa. 1995)). Where, as here, a petitioner

claims that he received ineffective assistance of counsel, our Supreme Court has stated that:

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner. To obtain relief, a petitioner must demonstrate that counsel's performance was deficient and that the deficiency prejudiced the petitioner. A petitioner establishes prejudice when he demonstrates "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." … [A] properly pled claim of ineffectiveness posits that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice befell the petitioner from counsel's act or omission.

***Commonwealth v. Johnson***, 966 A.2d 523, 532-33 (Pa. 2009) (citations omitted).

Appellant first contends that Attorney Alterio rendered ineffective assistance by not requesting a special jury instruction regarding how the jury should evaluate the DNA evidence presented by the Commonwealth. Appellant's Brief at 20. Specifically, Appellant claims counsel should have sought an instruction similar to the following:

> You have heard testimony about frequency estimates calculated for matches between known reference DNA samples and some of the DNA evidence items in this case. You have heard testimony concerning fingerprint evidence on an item at the scene. The random match probability statistics used by DNA experts and the

expert testimony regarding the presence of fingerprint evidence is not the equivalent of a statistic that tells you the likelihood of whether a defendant actually committed a crime or was involved in the perpetration of a crime. Neither the presence of DNA or fingerprint evidence conclusively establishes that the Defendant was present at the Dale residence on the date of the criminal activity or that he was a perpetrator in the criminal activity. It is evidence being submitted to you for the purpose of showing that DNA and fingerprint evidence were found at the Dale residence and you, as the finder of fact, must consider and determine what significance to attach to the testing results and their presence at the scene.

*Id.* at 23.

In rejecting this claim, the PCRA court initially concluded that Appellant's argument essentially involved a challenge to the sufficiency of the evidence to sustain his convictions, which was previously litigated on direct appeal. **See** PCRA Court Opinion (PCO), 11/25/13, at 8. The court further determined that Attorney Alterio had a reasonable explanation for not requesting a special jury instruction regarding DNA evidence. **See id.** at 8-9. We agree with, and adopt, the PCRA court's analysis in both of these regards.

However, we are compelled to address one argument Appellant raises on appeal. He states:

At the time of the PCRA proceedings, it was anticipated the failure of [t]rial [c]ounsel might be excused by the [PCRA] [c]ourt because there is no case law on point requiring such an instruction and that such an instruction is not contained in the standard criminal jury instructions in Pennsylvania. That was exactly how the PCRA [c]ourt ruled in finding that the prongs of the ineffective assistance of counsel standard had not been met.

What the PCRA [c]ourt overlooked and what this Honorable Court should not overlook is that, though the standard jury

> instructions do not provide this specific instruction or there is no case on point, to summarily render a conclusion that such instruction is unnecessary is misplaced. Simply because a standard jury instruction has yet to be provided or an appellate case may not point out that a particular instruction is required, does not dispel counsel's duty to ask for a specific instruction that fits the case and, if rejected by the trial court, [to] attempt to make new law.

Appellant's Brief at 28.

Appellant's argument does not convince us that Attorney Alterio acted ineffectively. It is well-established that "[c]ounsel cannot be deemed ineffective for failing to predict developments or changes in the law." **Commonwealth v. Gribble**, 863 A.2d 455, 464 (Pa. 2004) (citing **Commonwealth v. Ogrod**, 839 A.2d 294 (Pa. 2003); **Commonwealth v. Carpenter**, 725 A.2d 154 (Pa. 1999)). Similarly, we decline to find Attorney Alterio ineffective for not attempting to instigate a change in the law regarding jury instructions on DNA evidence. While certainly, counsel *could have* requested the above-stated jury instruction, he was not *obligated* to do so under the law in existence at the time of Appellant's trial, or even under the law as it stands today. **See Commonwealth v. Spotz**, 896 A.2d 1191, 1238 (Pa. 2006) (declining to find counsel ineffective for failing to request a jury instruction that was first required by a case decided three years after petitioner's trial; stating that to prove ineffectiveness, petitioner "must demonstrate that trial counsel was ineffective under the law in existence at the time of trial"). Thus, Appellant has failed to prove that Attorney Alterio rendered ineffective representation.

In Appellant's second issue, he maintains that Attorney Alterio acted ineffectively by failing to request that Appellant participate in a pre-trial lineup. After reviewing the briefs of the parties, the record, and the applicable law, we conclude that the PCRA court's opinion adequately addresses this claim of ineffectiveness. Accordingly, we adopt the PCRA court's analysis of this issue. **See** PCO at 9-10.

In Appellant's next issue, he maintains that Attorney Alterio was ineffective for not seeking to use "the subpoena power of the [c]ourt to compel Mr. Dale to testify … at [Appellant's] November 9, 2007 preliminary hearing." Appellant's Brief at 35. The PCRA court concluded that counsel had a reasonable basis for his conduct. Specifically, Attorney Alterio feared that if Mr. Dale took the stand during the preliminary hearing, he would identify Appellant as one of the assailants. **See** N.T. PCRA Hearing, 2/6/13, at 25-26. Based on the PCRA court's discussion, which we adopt, we agree with the court that Attorney Alterio had a reasonable strategy for not seeking to have Mr. Dale testify at the preliminary hearing. **See** PCO at 10-11.

However, the PCRA court did not address an alternative argument encompassed within Appellant's third IAC issue. Appellant contends that Attorney Alterio could have moved for Mr. Dale's testimony to be taken and preserved prior to trial under Pa.R.Crim.P. 500 (permitting a party to move for the court to "order the taking and preserving of the testimony of any witness who may be unavailable for trial"). Appellant maintains that he

could have waived his right to be present during the taking of such testimony, thereby alleviating Attorney Alterio's concern that Mr. Dale would identify Appellant. As such, Appellant argues that Attorney Alterio had no reasonable strategy for not seeking to take and preserve Mr. Dale's testimony under Rule 500.

However, at the PCRA hearing, Appellant's counsel only questioned Attorney Alterio regarding the Rule 500 issue as follows:

> [Appellant's Counsel:] Were you aware that under Pennsylvania Rule of Criminal Procedure 500, you could have moved the Court to preserve Mr. Dale's testimony?
>
> [Attorney Alterio:] Yes.
>
> [Appellant's Counsel:] Okay.
>
> The Court: Counsel, let me just get this clear. I don't normally interject, but—
>
> [Appellant's Counsel:] Sure.
>
> The Court: As I understand your trial tactic was that you didn't want to take a chance that if Mr. Dale got on the stand and saw your client sitting there that he would [identify] him?
>
> [Attorney Alterio:] That's correct.
>
> The Court: Okay, I understand. Go on Counsel, thank you.
>
> [Appellant's Counsel:] Would you agree that submitting Mr. Dale's statement of identification at the time of trial would have assisted the defense?
>
> [Attorney Alterio:] Yes.
>
> [Appellant's Counsel:] Okay. And you've already answered my question as [to] why you did not attempt to preserve his testimony and that was because you didn't want to take the chance that he might identify [Appellant] as the perpetrator?

[Attorney Alterio:] Yes, since he had already given his statements to the police and [they] were part of the official record.

[Appellant's Counsel:] Okay, but didn't he tell the trooper that he couldn't identify anybody else?  Is that true?

[Attorney Alterio:] That probably is true.  I think that is correct.

PCRA Hearing at 26-27.  At that point, Appellant's PCRA counsel moved on to question Attorney Alterio about another unrelated issue.  *Id.* at 27.

It is apparent from this testimony that Appellant did not specifically confront Attorney Alterio with the fact that Appellant could have waived his right to be present under Rule 500, thereby avoiding the risk of Mr. Dale's identifying Appellant as one of the perpetrators.  Because Appellant did not raise this specific assertion at the PCRA hearing, Attorney Alterio did not state whether he considered - or why he declined - the option of invoking Rule 500 and waiving Appellant's right to be present.  We remind Appellant that this Court must presume that Attorney Alterio had a reasonable basis for his conduct, and it is Appellant's burden to prove otherwise.  *See Commonwealth v. Williams*, 980 A.2d 510, 520 (Pa. 2009) (stating that "counsel is presumed effective," and it is a petitioner's burden to prove each prong of the ineffectiveness test, including that "counsel … did not have a reasonable basis for his or her actions or failure to act").  Based on this record, Appellant has failed to satisfy that burden of proof.

In Appellant's fourth issue, he contends that Attorney Alterio rendered ineffective assistance when he failed to request a continuance of trial to obtain the services of experts in the fields of DNA and fingerprint analysis.

After reviewing Appellant's arguments in this vein, we conclude that the PCRA court's opinion accurately disposes of the majority of his contentions. *See* PCO at 11-13.

However, we note that the court did not address Appellant's assertion that Attorney Alterio should have questioned a DNA expert about "whether there were any potential weaknesses in the DNA evidence which he could point out to the jury." Appellant's Brief at 45. For instance, Appellant states that:

> A review of Sample Q6, being the sample taken from the duct tape on Freda Dale's blue pants, which purportedly contains a mixture of DNA from Mrs. Dale and [Appellant], discloses no signal or flag in the category for [fibrinogen alpha chain (FGA)]. The lack of any signal in the FGA category is strong evidence that [Appellant] did not contribute to the mixture.

*Id.*

Appellant did not present any evidence (such as the testimony of a DNA expert) at the PCRA hearing to prove that this lack of "signal or flag in the category" for FGA would have been a valid - let alone "strong" - basis upon which Attorney Alterio could have cross-examined the Commonwealth's DNA expert. Therefore, Appellant has failed to demonstrate that he was prejudiced by Attorney Alterio's failure to consult with a DNA expert about ways to challenge the Commonwealth's DNA expert on cross-examination.

Appellant's fifth and sixth claims of ineffectiveness are related. Appellant essentially argues that Attorney Alterio erred by not objecting to,

or seeking to exclude, Sergeant Kolson's hearsay testimony concerning Mr. Dale's account of what occurred inside the Dale residence during the attack. The PCRA court concluded, *inter alia*, that counsel had a reasonable basis for wanting Sergeant Kolson's testimony to be admitted. We agree with the PCRA court's well-reasoned analysis in regard to both of these issues. **See** PCO at 13-18.

We add, however, that Appellant has also failed to prove he was prejudiced by the admission of Sergeant Kolson's testimony recounting Mr. Dale's description of the attack. The only argument Appellant proffers on this point is his claim that "the egregiousness of the story, compounded by the description of the aftermath[,] was not only prejudicial, but [it was] also inflammatory…." Appellant's Brief at 51. We disagree. Aside from Sergeant Kolson's testimony, the jury heard evidence regarding the state in which both victims were found (*i.e.* lying on the floor bound with duct tape, Mrs. Dale deceased, and Mr. Dale badly beaten), as well as descriptions of the injuries suffered by the Dales. In light of this evidence, we fail to see the "egregious" or "inflammatory" nature of Mr. Dale's statement to Sergeant Kolson describing that he was bound with duct tape and beaten severely by the perpetrators as they demanded money and ransacked his home. Accordingly, even if Attorney Alterio should have objected to the admission of Sergeant Kolson's testimony, we would conclude that Appellant was not prejudiced by this purported error.

In Appellant's seventh IAC claim, he maintains that Attorney Alterio was ineffective for failing to argue that the out-of-court statement of Mr. Dale, in which he identified Michael Marks as one of the perpetrators, was admissible under the "due process exception" to the rule prohibiting hearsay. The PCRA court's opinion thoroughly and adequately addresses this issue. *See* PCO at 18-24.

Likewise, the PCRA court accurately discusses Appellant's eighth issue, in which he avers that Attorney Alterio acted ineffectively by failing to object to misleading questions asked by the Commonwealth to Appellant's two alibi witnesses, Vikki and Karyl Fisher, regarding why they did not "immediately notify law enforcement officers [that] they were with [Appellant] on the date of the crime." Appellant's Brief at 63. We adopt the PCRA court's opinion as our own regarding this claim. *See* PCO at 24-30.

Finally, in Appellant's ninth issue, he argues that Attorney Alterio should have objected when the Commonwealth cross-examined Karyl Fisher regarding her prior conviction for hindering the apprehension of a criminal ("hindering apprehension"). We adopt the PCRA court's analysis of this issue. *See* PCO at 30-32. However, we add a brief discussion of Appellant's argument that Attorney Alterio improperly considered Fisher's offense as crimen falsi where Fisher "categorically denied ever lying to the police" when she testified at trial. Appellant's Brief at 68. Appellant maintains that when Fisher denied her crime involved a false statement to police, Attorney Alterio

should have objected to the Commonwealth's admission of Fisher's hindering apprehension conviction.

Even if Attorney Alterio should have objected to the Commonwealth's line of questioning, Appellant has not proven that he was prejudiced by counsel's failure to do so. First, Appellant offered no evidence at the PCRA hearing (such as the record of Fisher's hindering apprehension conviction) to prove that had Attorney Alterio objected, the Commonwealth could not have responded with proof that Fisher *did* admit to lying to police when pleading guilty to that offense. Thus, he has failed to prove that an objection by Attorney Alterio would have been sustained.

Moreover, Appellant's claim that the outcome of the proceeding would have been different had Attorney Alterio challenged the admission of Fisher's hindering apprehension offense is insufficient to prove prejudice. Appellant claims that he was "greatly prejudiced" when the Commonwealth "improperly smeared the character of his alibi witness and discredited her alibi testimony through illegitimate means." Appellant's Brief at 68. However, as the Commonwealth points out,

> [t]he jury could have discredited the testimony of Karyl Fisher for a variety of reasons (*e.g.*, her delayed reporting to law enforcement, her familial relationship with [Appellant] and obvious motive to lie in order to protect him, the fact that [Appellant's] fingerprint was found on an envelope on a desk of papers in the victims' home, the fact that his DNA was found on items both inside and outside of the home, etc.).

Commonwealth's Brief at 45-46. The Commonwealth's argument is sound. We cannot agree with Appellant that there is a reasonable probability the

jury would have believed Fisher's alibi testimony but for the evidence of her hindering apprehension offense. Thus, Appellant failed to prove he was prejudiced by counsel's alleged error in this regard.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/26/2014

## IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEATH OF PENNSYLVANIA,

vs.

2149 of 2007

MARK M. FISHER,

Defendant.

Debbie O'Dell-Seneca, P.J.
November 25, 2013

## OPINION AND ORDER

## DENYING DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF.

The Court has thoroughly reviewed and considered the Defendant's *Petition for Post-Conviction Relief and/or Writ of Habeas Corpus* ("PCRA Petition"), filed by the Defendant's counsel, Robert M. Buttner, Esq., on February 8, 2012, the Defendant's *Brief in Support of Motion for Post Conviction Relief* ("Defendant's Brief), filed on June 14, 2013, the Commonwealth's *Memorandum of Law in Opposition to Defendant's PCRA Petition*, filed on July 15, 2013, and the record, and issues the following Opinion and Order.

## Procedural History

A criminal complaint was filed against the Defendant on December 19, 2006, and a warrant was issued on January 2, 2007. The Defendant was arrested on November 7, 2007; an information was filed on January 15, 2008. The Defendant was charged with Criminal Homicide[1], Robbery[2] (2 counts), Burglary[3], Aggravated Assault[4], Unlawful Restraint[5] (2 counts),

---

[1] 18 Pa.C.S.A. § 2501.
[2] 18 Pa.C.S.A. § 3701(a)(1)(i) and (ii).
[3] 18 Pa.C.S.A. § 3502.
[4] 18 Pa.C.S.A. § 2702(a)(1).

1

Falsely Impersonating Persons Privately Employed[6], Recklessly Endangering Another Person[7] (2 counts), and Criminal Conspiracy[8].

Glenn Alterio, Esq., Public Defender, entered his appearance on behalf of the Defendant. Attorney Alterio filed two *Petitions to Retain Expert Witness* on April 4, 2008, and sought to retain an expert specializing in blood testing and DNA research as well as an expert accredited in the study of fingerprint examination, comparison, and interpretation. The undersigned granted the petitions that same day and set a fee limit of $3,000.00 for the DNA expert and $1,000.00 for the fingerprint expert.

On August 15, 2008, the Defendant, through counsel, filed a *Notice of Alibi Defense*. The names provided were Vicky Fisher and Karyl Fisher, both of Texarkana, Arkansas. The Commonwealth filed a *Reciprocal Discovery Notice* on August 25, 2008, arguing that the Defendant's *Notice of Alibi* was untimely and that it failed to indicate where the Defendant claimed to have been at the time of the commission of the offenses charged. Further, the Commonwealth attempted to contact Vicky Fisher at the phone number in the *Notice* and she declined to be interviewed. Detective Michael Carso requested that the Arkansas State Police attempt to interview the witnesses and filed a supplemental report. An *Amended Notice of Alibi Defense* was filed on August 25, 2008, alleging that the Defendant was with the alibi witnesses in Arkansas at the time the crimes were committed in Pennsylvania.

The Defendant, through counsel, filed a *Motion for Nominal Bond Under Pa.R.C.P. 600(e)* on August 28, 2008. Additionally, a *Motion in Limine* was filed on September 2, 2008, regarding the Commonwealth's usage of the ethnic references "Gypsies" and "English

---

[5] 18 Pa.C.S.A. § 2902(a)(1).
[6] 18 Pa.C.S.A. § 4115.
[7] 18 Pa.C.S.A. § 2705.
[8] 18 Pa.C.S.A. § 903(a)(1).

2

Travelers" and the Defendant's criminal history and record. The Commonwealth filed the *Commonwealth's Answer to Defendnat's (sic) Rule 600 Motion* on September 3, 2008, and the *Commonwealth's Response to Defendant's Motion in Limine* on September 4, 2008. A hearing was held on September 4, 2008, and the Commonwealth presented its own *Motion in Limine*. The Commonwealth agreed with the Defendant regarding the use of his ethnic background at trial, and the undersigned granted that portion of the motion. On September 8, 2008, the Commonwealth's *Motion in Limine* was granted in part and denied in part: the statements of victim Shannon Dale were not admissible as hearsay, and the prior filing of criminal charges was admissible as being consistent with the alibi defense raised by the Defendant.

Jury trial commenced on September 9, 2008, and the jury returned a verdict of guilty of all charges: Murder of the Second Degree, a Felony of the First Degree; Robbery, a Felony of the First Degree (2 counts); Burglary, a Felony of the First Degree; Aggravated Assault, a Felony of the First Degree; Unlawful Restraint, a Misdemeanor of the First Degree (2 counts); False Impersonation of a Private Employee, a Misdemeanor of the Second Degree; Recklessly Endangering Another Person, a Misdemeanor of the Second Degree (2 counts); and Criminal Conspiracy to Commit Robbery, a Felony of the First Degree.

Mr. Fisher was sentenced on December 3, 2008, to life in prison without the possibility of parole on the charge of Murder of the Second Degree consecutive to his sentence in the State of Arkansas. On the first charge of Robbery, the Defendant was sentenced to four (4) to eight (8) years of incarceration in the state penal system to be served consecutively to the Murder sentence; on the second charge of Robbery, three (3) to six (6) years of incarceration to be served concurrently; on the charge of Burglary, two (2) to four (4) years of incarceration to run concurrent; on the charge of Aggravated Assault, four (4) to eight (8) years of incarceration to

run consecutive; on the charge of Unlawful Restraint, one (1) to two (2) months to run concurrent; on the charge of False Impersonation of a Private Employee, R.S.[9] probation to run concurrent; on the charges of Recklessly Endangering Another Person, separate terms of one (1) to two (2) months of incarceration to run concurrent; on the charge of Criminal Conspiracy to Commit Robbery, four (4) to eight (8) years of incarceration to run consecutively to the above sentences. He was given credit for time served from October 31, 2007, with the life sentence to commence upon his release from incarceration in Arkansas.

The Defendant, through counsel, filed a *Post-Stentence (sic) Motion for Modification of Sentence* on December 9, 2008, and requested an imposition of concurrent sentences rather than the consecutive sentences he received. The Commonwealth filed its *Answer to Defendant's Motion for Modification of Sentence* on December 17, 2008, and the undersigned denied the Defendant's Motion that day.

Mr. Fisher then retained new counsel and Carl J. Poveromo, Esq., entered his appearance on January 12, 2009, along with a *Notice of Appeal* signed by Attorney Poveromo and Robert M. Buttner, Esq. The Superior Court of Pennsylvania affirmed this Court's decision on June 7, 2010[10]. The Defendant filed a *Petition for Permission to Appeal to the Pennsylvania Supreme Court* on September 15, 2010, which was denied on February 9, 2011.[11]

A timely *Petition for Post-Conviction Relief and/or Writ of Habeas Corpus* ("PCRA Petition") was filed by the Defendant on February 8, 2012. Nine claims were made, all alleging ineffective assistance of trial counsel. A hearing was scheduled before the undersigned for September 6, 2012, but the Defendant, through counsel, filed a *Motion to Continue and Reschedule the Hearing on Defendant's Petition for Post-Conviction Relief and/or Writ of*

---

[9] Restorative Sanctions.
[10] 49 WDA 2009.
[11] 514 WAL 2010.

4

*Habeas Corpus* and the hearing was rescheduled to October 31, 2012. Another request for a continuance was filed by the Defendant on October 29, 2012, and the hearing was held on February 6, 2013.

Pursuant to the PCRA hearing, the Defendant, through counsel, filed a *Brief in Support of Motion for Post Conviction Relief* on June 14, 2013, and maintained nine claims of ineffective assistance of counsel. The Commonwealth responded with a *Memorandum of Law in Opposition to Defendant's PCRA Petition*, filed on July 15, 2013. The present Opinion is in response to the PCRA Petition.

## Analysis

A PCRA petition must be filed "within one year of the date the judgment becomes final." 42 Pa.C.S. § 9545(b). The Defendant's *Petition for Permission to Appeal to the Pennsylvania Supreme Court* was denied on February 9, 2011, and his PCRA Petition was filed on February 8, 2012. Therefore he meets the timeliness requirement.[12]

To be eligible for relief under Pennsylvania's Post Conviction Relief Act, the petitioner must prove by a preponderance of the evidence that he has been convicted of a crime and, at the time relief is granted, is "(i) currently serving a sentence of imprisonment, probation or parole for the crime; (ii) awaiting execution of a sentence of death for the crime; or (iii) serving a sentence which must expire before the person may commence serving the disputed sentence." 42 Pa.C.S. § 9543(a)(1). In the instant case, the Defendant was sentenced on December 3, 2008, to life in prison, and he is currently serving a sentence in the State of Arkansas. The sentence for the above-captioned case is set to begin upon his release from incarceration in Arkansas. The Defendant meets the requirement of subsection (iii).

---

[12] The one-year period to file the petition began to run 90 days after the Supreme Court of Pennsylvania denied the petition for allowance of appeal as the Defendant did not seek review by the United States Supreme Court. *Commonwealth v. Fairiror*, 809 A.2d 396 (Pa.Super. 2002).

A petitioner must also prove that the conviction or sentence resulted from one of several enumerated events. One such claim is "ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). The Defendant claimed only this basis for relief but argued nine specific grounds:

1) Trial Counsel rendered ineffective assistance of counsel when he failed to request a jury instruction informing the jury on the manner in which they should consider the presentation of DNA evidence.
2) Trial Counsel rendered ineffective assistance of counsel in failing to request a line-up involving Mr. Fisher and, thereby, deprived Mr. Fisher of a fair trial.
3) Trial Counsel rendered ineffective assistance of counsel in failing to preserve the testimony of Mr. Dale as to the identification of the actual perpetrator where the failure resulted in the exclusion of material evidence indicating that Mr. Dale had specifically identified Michael Marks and, rather than Mr. Fisher, as a perpetrator.
4) Trial Counsel rendered ineffective assistance of counsel when he failed to request a continuance of trial and obtain the services of an expert in the fields of DNA analysis and fingerprint identification.
5) Trial Counsel rendered ineffective assistance of counsel in failing to object or file a motion in limine to preclude the hearsay testimony of Sergeant Kevin Kolson concerning Shannon Dale's account of the incident which did not fit within any exception to the hearsay rule.
6) Trial Counsel rendered ineffective assistance of counsel in failing to object or in failing to file a motion in limine to preclude the hearsay statements of Mr. Dale brought in through Sergeant Kevin Kolson, the admission of which were in violation of the Confrontation Clause, Sixth Amendment, of the United States Constitution and Article 1, § 9 of the Pennsylvania Constitution.
7) Trial Counsel rendered ineffective assistance of counsel by failing to argue that the out-of-court statement of Shannon Dale, concerning his identification of Michael Marks, was admissible pursuant to the Due Process exception to the hearsay rule.
8) Mr. Fisher was denied effective assistance of counsel when Trial Counsel failed to object to misleading questions by the Assistant District Attorney when he asked Mr. Fisher's alibi witnesses about their failure to immediately notify law enforcement officers they were with Mr. Fisher on the date of the crime.
9) Mr. Fisher was denied effective assistance of counsel when Trial Counsel failed to object when the Assistant District Attorney cross examined alibi witness, Karyl Fisher about her conviction for hindering the apprehension of a criminal in that the offense was not *crimen falsi*.

The test for ineffective assistance of counsel was set forth by the Supreme Court of

Pennsylvania in *Commonwealth v. Pierce*, 527 A.2d 973 (Pa. 1987). The test from *Strickland v.*

6

*Washington* was adopted, although the Pennsylvania test has three prongs rather than two. 466 U.S. 668 (1984).

> The petitioner in such matters is required to make the following showing in order to succeed with such a claim: (1) that the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) that, but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. The failure to satisfy any prong of this test will cause the entire claim to fail.

*Commonwealth v. Harris*, 972 A.2d 1196, 1203 (Pa. Super. 2009) (internal citations omitted).

Further, "counsel is presumed to be effective, and petitioner has the burden of proving otherwise." *Id.* "Where the petitioner has demonstrated that counsel's ineffectiveness has created a reasonable probability that the outcome of the proceedings would have been different, then no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v. Kimball*, 724 A.2d 326, 333 (Pa. 1999).

> In 2012, the Supreme Court of Pennsylvania explained that:

> [B]oth the U.S. Supreme Court and this Court have made clear that a court is not required to analyze the elements of an ineffectiveness claim in any particular order of priority; instead, if a claim fails under any necessary element of the *Strickland* test, the court may proceed to that element first. Counsel cannot be deemed ineffective for failing to raise a meritless claim.

*Commonwealth v. Sepulveda*, 55 A.3d 1108, 1117-1118 (Pa. 2012) (internal citations omitted).

A petitioner "must make out all three prongs of an ineffectiveness claim in order to be granted relief." *Commonwealth v. Rollins*, 738 A.2d 435, 441 (Pa. 1999).

Finally, the petitioner must prove by a preponderance of the evidence that any allegation of error was not previously litigated or waived,[13] and "that the failure to litigate the issue prior to

---

[13] 42 Pa.C.S. § 9543(a)(3).

7

or during trial, during unitary review or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel."[14]

**Claim #1:**

The Defendant argues that: "Trial Counsel rendered ineffective assistance of counsel when he failed to request a jury instruction informing the jury on the manner in which they should consider the presentation of DNA evidence." He further alleges that, "While the present matter involves a challenge to Trial Counsel's failure to request a jury instruction, sufficiency of the evidence must be reviewed, because the jury instruction Counsel failed to request would explain just that point."

The Defendant admits on Page 8 of the PCRA Petition that "there is no Pennsylvania case precisely 'on point'" to support his claim that Attorney Alterio should have proposed a jury instruction despite the fact that no standard jury instruction exists for this issue. The case law on which he relies refers to the sufficiency of the evidence, which was addressed on direct appeal.[15] (*See* Paragraphs 43 through 47 of the PCRA Petition and Pages 5 through 9 of the Brief.) The Superior Court of Pennsylvania held that "a review of the certified record reveals that the trial court properly disposed of this claim." The evidence was sufficient to support the Defendant's conviction. This Court does not have jurisdiction to examine previously litigated issues.

As to the claim of ineffective assistance of counsel, the Defendant has failed to meet the second prong of the *Pierce* test. He provided a proposed jury instruction on Page 14 of the PCRA Petition and on Page 12 of the Defendant's Brief. At the PCRA hearing on February 6, 2013, Attorney Alterio was asked why he didn't propose this type of jury instruction. He responded, "Because I didn't believe it was necessary under the circumstances." (N.T. 2/6/13,

---

[14] 42 Pa.C.S. § 9543(a)(4).
[15] 49 WDA 2009.

8

14:16-17). Attorney Alterio explained that "the standard instructions regarding circumstantial evidence and other evidence provided in a case would cover the jury's weight and consideration regarding evidence presented by the Commonwealth. So, there is not a need specifically directed to DNA or fingerprint evidence." (*Id.* at 1-6). In providing this rationale, Attorney Alterio demonstrated that he had a reasonable strategic basis for his failure to request a special jury instruction. The Defendant has provided no law which confers an obligation for trial counsel to request a special jury instruction on how this type of forensic evidence should be viewed and has failed to rebut the presumption that trial counsel was effective. This claim fails.

### Claim #2:

The Defendant argues that: "Trial Counsel rendered ineffective assistance of counsel in failing to request a line-up involving Mr. Fisher and, thereby, deprived Mr. Fisher of a fair trial." In the PCRA hearing, the Defendant indicated that he had indeed requested a line-up. (N.T. 2/6/13, 71:23-72:19). Attorney Alterio recalled that request and explained why he never requested a line-up: the first person who could view a line-up would be the Detective, who was the affiant on the complaint and would have already seen and identified the Defendant. (*Id.* at 72:4-6). Mr. Dale was alive for a time before trial, and Attorney Alterio stated that "the reasons why I didn't seek it was because I didn't want to take the risk that he would in fact identify Mr. Fisher as the person in his house." (*Id.* at 56:12-14). He did not believe that the lack of a line-up involving Mr. Fisher was prejudicial to the Defendant for the same reason. (*Id.* at 57:23-58:7). As to the last witness for a line-up, Sally Seliga, Attorney Alterio believed that in addition to not wanting to risk having Mr. Fisher identified in a line-up, the defense was strong enough without a risky line-up. (*Id.* at 19:7-16). Attorney Alterio had a strategic basis for not requesting a line-up, and the Defendant has not proven the second prong of the *Pierce* test.

9

Also, the Superior Court of Pennsylvania has been clear regarding a citizen's right to a line-up. "To begin with, an accused does not have a constitutional right to a line-up .... [Therefore,] counsel's failure to request a line-up ... is not *per se* ineffective assistance." *Commonwealth v. Davis*, 439 A.2d 195, 200 (Pa.Super. 1981). Similarly, in *Commonwealth v. Early*, the Court stated: "In Pennsylvania, a defendant does not have a right to a pre-trial line-up." 546 A.2d 1236, 1240 (Pa.Super. 1988), *citing Commonwealth v. Walker*, 275 Pa.Super. 311, 418 A.2d 737 (1980). The Defendant has failed to prove that trial counsel rendered ineffective assistance, and this claim fails.

**Claim #3:**

The Defendant argues that: "Trial Counsel rendered ineffective assistance of counsel in failing to preserve the testimony of Mr. Dale as to the identification of the actual perpetrator where the failure resulted in the exclusion of material evidence indicating that Mr. Dale had specifically identified Michael Marks and, rather than Mr. Fisher, as a perpetrator." Specifically, the Defendant suggests that Attorney Alterio "should have used the subpoena power of the Court to compel Mr. Dale to testify under oath and on-the-record in open court at Mr. Fisher's November 9, 2007 preliminary hearing." (Defendant's Brief, Page 24).

The Defendant relies upon Pa.R.Crim.P. 500(A)(1) which provides that:

> At any time after the institution of a criminal proceedings, upon motion of any party, and after notice and hearing, the court may order the taking and preserving of the testimony of any witness who may be unavailable for trial or for any other proceeding, or when due to exceptional circumstances, it is in the interests of justice that the witness' testimony be preserved.

As previously stated, Attorney Alterio opted to not request a line-up before Mr. Dale because of the risk that he would identify Mr. Fisher as one of the perpetrators. Trial counsel refrained from

10

calling Mr. Dale to testify at the preliminary hearing for the same reason (N.T. 2/6/13, 25:21-26:5), which is a reasonable strategic basis doing so.

At trial, the defense was able to disclose to the jury that Mr. Dale had been shown a photo array of suspects immediately following the incident, and he identified a different individual as a perpetrator. The suspect, Michael Marks, was not named specifically. (*Id.* at 25:13-16). Attorney Alterio testified that he did not feel that his case was prejudiced by the fact that Mr. Dale did not review an identification of the Defendant prior to trial because he "was concerned that Mr. Dale might in fact, if he was given the opportunity, have identified Mr. Fisher as one of the people at the house." (*Id.* at 57:23-58:8).

Therefore, the second prong of the *Pierce* test has not been met as Attorney Alterio had a strategic basis for his decision, and the Defendant has also failed to prove the third prong: that there is a reasonable probability that the outcome would have been different. A different outcome *could have* occurred had Mr. Dale testified and identified the Defendant as one of the perpetrators; the Commonwealth's case would have been even stronger. Attorney Alterio did not want to take that risk, and this claim fails.

**Claim #4:**

The Defendant argues that: "Trial Counsel rendered ineffective assistance of counsel when he failed to request a continuance of trial and obtain the services of an expert in the fields of DNA analysis and fingerprint identification." At the PCRA hearing, Attorney Alterio testified that the defense had court orders for money to employ both witnesses and had hired a DNA expert but not a fingerprint expert. (*Id.* at 51:12-15). At the time of trial, the DNA expert had reviewed the materials, but the expert's report had not yet been provided to the defense. A couple days before trial, Attorney Alterio was prepared to request a continuance because this

11

expert was not yet prepared, but the Defendant refused to agree to a continuance. (*Id.* at 51:15-52:2).

Despite not having a final report prepared for trial, Attorney Alterio had spoken with the DNA expert about their analysis. He testified that the "expert had indicated that he could not contradict the Commonwealth's evidence as it was outlined in the reports." (*Id.* at 47:12-14). The Defendant has failed to meet the third prong of the *Pierce* test: "that, but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." *Pierce, supra.* If the defense would have been granted a continuance and the expert testified that his analysis would not have contradicted the Commonwealth's evidence, then it is highly unlikely that his presence and testimony at trial would have caused the verdict to be different.

Additionally, assuming *arguendo* that the expert's report would have been helpful to the Defendant's case, Mr. Fisher decided to forego his option to postpone the trial against advice of counsel. The Defendant argues that "Mr. Fisher's unwillingness to concur in a request for a continuance does not excuse Trial Counsel's failure to request a brief postponement of trial in order to obtain the necessary expert reports." (Defendant's Brief, Page 30). Counsel clearly had a strategic basis for his inaction as to requesting a continuance. The Supreme Court of Pennsylvania has stated that, "Although hindsight might reveal the comparative worth of alternatives not pursued, an ineffectiveness claim cannot succeed on that basis." *Commonwealth v. Chester*, 587 A.2d 1367, 1384 (Pa. 1991), *cert. denied*, 112 S.Ct. 422 (1991), citing *Commonwealth v. Tripplett*, 381 A.2d 877 (Pa. 1977).

As to the fingerprint issue, Mr. Fisher has failed to prove by a preponderance of the evidence that the "ineffective assistance of counsel which, in the circumstances of the particular

12

case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). At the PCRA hearing, Attorney Alterio was thoroughly examined regarding the DNA report and expert. The undersigned specifically asked him if he had both a DNA expert and a fingerprint expert, and he replied that he "had not acquired a fingerprint expert at the time." (N.T. 2/6/13, 51:10-15). PCRA counsel did not explore the issue of a fingerprint expert when given the opportunity and has not proven "that, but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." *Pierce, supra.* This claim fails.

## Claim #5:

The Defendant argues that: "Trial Counsel rendered ineffective assistance of counsel in failing to object or file a motion in limine to preclude the hearsay testimony of Sergeant Kevin Kolson concerning Shannon Dale's account of the incident which did not fit within any exception to the hearsay rule." Sgt. Kolson was called by the Commonwealth to testify about Shannon Dale's out-of-court statements. At the PCRA hearing, Attorney Alterio agreed that the testimony contained hearsay[16]. (N.T. 2/6/13, 29:20-30:3). Defendant's counsel questioned him about this testimony:

Q:    Okay. Prior to trial, you did not file a Motion to Exclude Mr. Dale's testimony or statement through Sergeant Kolson, did you?

A:    No, I wanted it to come in.

Q:    You didn't object to it?

A:    No.

---

[16] Hearsay is "a statement that the declarant does not make while testifying at the current trial or hearing and a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). It is generally inadmissible at trial unless it meets an exception under the Rules of Evidence. Pa.R.E. 802.

13

THE COURT:     Wait.  Again, since we're not at jury trial, this is a good time for me to ask.  You said you wanted it to come in?

A:     Yes.

THE COURT:     So can I assume by you saying that, that was a trial tactic also?

A:     Yes, Your Honor.

THE COURT:     All right.  Would you explain why you wanted it to come in?

A:     Because the descriptions that were provided, the descriptions provided by Mr. Dale and the identification of Mr. Marks by Mr. Dale, were not consistent with Mr. Fisher; either age, height, size, shape, facial hair and because the fact that there was no connection that could be established between Mr. Fisher and the Marks, I wanted the jury to understand that Mr. Dale was attacked by a group of individuals that had no connection with Mr. Fisher.

(*Id.* at 30:20-31:22).

In addition, Attorney Buttner sought to clarify the distinction of Sgt. Kolson's testimony:

Q:     Okay.  I guess in a clearer sense, what I could ask you is, the Commonwealth would have been able to present witnesses who could testify to the injuries sustained and damage to the house, correct?

A:     Yes.

Q:     But there would have been no testimony at the time of trial but for Detective Kolson's testimony of what the perpetrators actually did inside the house?

A: That's correct.

Q: And it's your position that it was better for your defense to have this come in detailing how Mr. Fisher was assaulted... how Mr. Dale was assaulted and how Ms. Dale was assaulted and that was more beneficial to your case than to exclude it, correct?

A: Because I wanted the entire testimony, yes.

(*Id.* at 33:8-22).

The Defendant argues that not only did Sgt. Kolson's testimony constitute inadmissible hearsay but it was the only testimony detailing Mr. Dale's encounter with the perpetrators. Without this testimony,

> [T]he details of the alleged attack would not have been presented to the jury. ... [Other] witnesses could only testify to the aftermath of the attack and not the chronological events or how they occurred. ... Had this testimony been excluded, the only testimony that would have been available to the Commonwealth at the time of the trial would have included testimony of the injuries inflicted, how the crime scene appeared after the fact, the fingerprint evidence, the questionable DNA evidence, neither of which demonstrated that Mr. Fisher was an actual perpetrator, and more importantly the testimony that other individuals had been seen at the residence that did not fit Mr. Fisher's description.

(Defendant's Brief, Page 38.)

The Supreme Court of Pennsylvania has clarified the second prong of the *Pierce* test regarding counsel's strategic basis for any action or inaction alleged to be ineffective:

> Generally, where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests. Trial counsel will not be deemed ineffective for failing to assert a claim that would not have been beneficial, or for failing to interview or present witnesses whose testimony would not have been helpful. Nor can a claim of ineffective assistance generally succeed through comparing, by hindsight, the trial strategy employed with alternatives not pursued. A finding that a chosen strategy lacked a reasonable basis is not warranted

15

unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.

*Commonwealth v. Williams*, 732 A.2d 1167, 1189 (Pa. 1999) (internal citations omitted).

In the PCRA hearing, Attorney Alterio clearly described his rationale for not objecting to Sgt. Kolson's hearsay statements. He appears to have seriously considered whether to object to the hearsay testimony, and his strategic basis was reasonable, so the second prong of the *Pierce* test fails. The chronological manner to which Mr. Fisher objects was merely a different format of evidence presentation; the testimony and evidence corroborated testimony given by other witnesses. The Defendant has failed to prove that his potential for a verdict in his favor would have been substantially greater had trial counsel objected or filed a Motion in Limine to preclude the hearsay testimony of Sgt. Kolson concerning Mr. Dale's account of the incident. This claim fails.

## Claim #6:

The Defendant argues that: "Trial Counsel rendered ineffective assistance of counsel in failing to object or in failing to file a motion in limine to preclude the hearsay statements of Mr. Dale brought in through Sergeant Kevin Kolson, the admission of which were in violation of the Confrontation Clause, Sixth Amendment, of the United States Constitution[17] and Article 1, § 9 of the Pennsylvania Constitution[18]."

PCRA counsel questioned Attorney Alterio relative to the Defendant's right to confront the witnesses against him as follows:

Q:     And it's your position that it was better for your defense to have this come

in detailing how Mr. Fisher was assaulted... how Mr. Dale was assaulted and how

---

[17] "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him ..." U.S. Const. Amend. VI.

[18] "In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to be confronted with the witnesses against him . . ." Pa. Const. Art. 1, § 9.

16

Ms. Dale was assaulted and that was more beneficial to your case than to exclude it, correct?

A: Because I wanted the entire testimony, yes.

Q: I'm speaking specifically of Sergeant Kolson's testimony.

A: Yes.

Q: Okay and would that explain why you did not object upon the grounds that this violated the Defendant's right to confront the witness against him or confrontation clause violation?

A: Yes, because the witness he would have been confronting was Mr. Dale who had already been deceased, but I wished to have Mr. Dale's testimony, if you will, so what he told the officers to the identity of the perpetrator or perpetrators.

Q: And in part and parcel to get that in you had to let them describe the actual assault itself?

A: That is correct.

(N.T. 2/6/13, 33:17-34:13).

"[A] harmless error analysis is mandated when violations of the constitutional right to confrontation are alleged." *Commonwealth v. McGrogan*, 532 A.2d 1203, 1209 (Pa. Super. 1987), *aff'd*, 568 A.2d 924 (Pa. 1990). "An error is harmless if it could not have contributed to the verdict." *Commonwealth v. Wright*, 961 A.2d 119, 143 (Pa. 2008). "Based upon the circumstances of the case, a violation of a defendant's right to confront witnesses against him may constitute harmless error if the admission could not have influenced the outcome of the case." *Commonwealth v. Jones*, 668 A.2d 491, 496 (Pa. 1995), *citing Commonwealth v.*

17

*Wharton*, 607 A.2d 710, 718 (Pa. 1992); *Commonwealth v. Chestnut*, 512 A.2d 603, 605-06 (Pa. 1986). In *Jones*,

> [T]he exchange at issue did not warrant a mistrial since it was simply cumulative of the testimony which [another witness] had previously given without objection. *See Chestnut*, 511 Pa. at 174-75, 512 A.2d at 605-06 (prior testimony which jury could reasonably infer implicated defendant despite redaction was harmless where testimony was cumulative in regard to the defendant and it did not influence the outcome against defendant). *See Wharton, supra.*

*Id.* at 496-497.

The statements of Mr. Dale that were recounted by Sgt. Kolson at trial were cumulative of other testimony. Therefore, any violation of the Defendant's confrontation rights that may have occurred was harmless error. Also, counsel had a reasonable strategic basis for his failure to object, and the Defendant has failed to prove that there is a reasonable probability that the outcome of his trial would have been different had Attorney Alterio objected to those statements. He fails to meet the requirements of the *Pierce* test, and this claim fails.

## Claim #7:

The Defendant argues that: "Trial Counsel rendered ineffective assistance of counsel by failing to argue that the out-of-court statement of Shannon Dale, concerning his identification of Michael Marks, was admissible pursuant to the Due Process exception to the hearsay rule." He relies heavily on federal case law.

> The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations. The rights to confront and examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process.

*Chambers v. Mississippi*, 410 U.S. 284 (1973).

In *Chambers*, the defendant was convicted of murdering a policeman during a riot. Before the policeman died, he fired two shots to the area from which the shots came at him and a

18

bullet hit the defendant. One of Chambers' acquaintances, Gable McDonald, later confessed to shooting the officer. At trial, the defendant attempted to show the jury that McDonald had repeatedly confessed to the crime, but he was prevented from doing so pursuant to Mississippi rules of evidence. State courts affirmed the trial court's decision to disallow the statements, but the Supreme Court of the United States reversed and remanded. Chambers had been prevented from cross-examining McDonald or from presenting "witnesses in his own behalf who would have discredited McDonald's repudiation and demonstrated his complicity." *Id.* at 294. The Court held that:

> The testimony rejected by the trial court here bore persuasive assurances of trustworthiness and thus was well within the basic rationale of the exception for declarations against interest. That testimony also was critical to Chambers' defense. In these circumstances, where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice.

*Id.* at 302.

However, it should be noted that:

> *Chambers* specifically confined its holding to the facts and circumstances presented in that case; [the Supreme Court of the United States] thus stressed that the ruling did not signal any diminution in the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and procedures. *Chambers* therefore does not stand for the proposition that the defendant is denied a fair opportunity to defend himself whenever a state or federal rule excludes favorable evidence.

*United States v. Scheffer*, 523 U.S. 303, 316 (1998) (internal quotations omitted) (internal citations omitted). The facts and circumstances of *Chambers* differ substantially from those in the instant case. In *Chambers*, "[t]he State's proof at trial excluded the theory that more than one person participated in the shooting." *Chambers, supra.* at 297. In the instant case, the Commonwealth's proof demonstrated that there were not one but four perpetrators of the crimes against the Dales. Additionally, Chambers' proposed testimony was relative to a sworn

19

confession and additional purported confessions by another individual. The third party's confession not only inculpated that person but also exculpated Chambers. There was no confession in the case of Mark Fisher but rather a photographic identification by the victim, alleging that a third party was one of his four attackers. Mr. Dale's identification of Michael Marks did not eliminate the possibility that the Defendant participated in the commission of those crimes.

Mr. Fisher also relies on *Green v. Georgia*, 442 U.S. 95 (1979). Roosevelt Green, Jr., and Carzell Moore were charged with the rape and murder of a woman. The men were tried separately; Green was convicted of murder, and Moore was convicted of rape and murder. Both received capital sentences. At Green's sentencing hearing, he attempted to offer the testimony of Thomas Pasby which would demonstrate that Moore confessed to killing the victim after sending Green to run an errand. Pasby had testified for the State at Moore's trial. The trial court did not permit Pasby's testimony and ruled that it constituted inadmissible hearsay. In addition, the State argued that the jury could infer that Green participated in the murder because two bullets were fired into the victim's body. The Supreme Court of the United States held that:

> Regardless of whether the proffered testimony comes within Georgia's hearsay rule, under the facts of this case its exclusion constituted a violation of the Due Process Clause of the Fourteenth Amendment. The excluded testimony was highly relevant to a critical issue in the punishment phase of the trial, and substantial reasons existed to assume its reliability.

(*Id.* at 97). Similar to *Chambers*, Green relied on third party testimony of a confession that would exculpate him. Again, the facts of *Green* greatly differ from the facts here as this Court did not exclude exculpatory evidence.

In the more recent case of *Holmes v. South Carolina*, the United States Supreme Court discussed the right to present a complete defense.

20

> State and federal rulemakers have broad latitude under the Constitution to
> establish rules excluding evidence from criminal trials. This latitude, however,
> has limits. Whether rooted directly in the Due Process Clause of the Fourteenth
> Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth
> Amendment, the Constitution guarantees criminal defendants a meaningful
> opportunity to present a complete defense. This right is abridged by evidence
> rules that infringe upon a weighty interest of the accused and are arbitrary or
> disproportionate to the purposes they are designed to serve.

547 U.S. 319, 324 (2006) (internal quotations omitted) (internal citations omitted). However, the

Court added:

> While the Constitution thus prohibits the exclusion of defense evidence under
> rules that serve no legitimate purpose or that are disproportionate to the ends that
> they are asserted to promote, well-established rules of evidence permit trial judges
> to exclude evidence if its probative value is outweighed by certain other factors
> such as unfair prejudice, confusion of the issues, or potential to mislead the jury.

*Id.* at 326.

Herein, Mr. Fisher proffers Pennsylvania case law to support this claim. In

*Commonwealth v. Ward*, 605 A.2d 796 (Pa. 1992), the appellant and his brother lived in the

same building and had been seen arguing outside it on the day it burned down. Ward was

convicted of arson and risking a catastrophe. At trial, he attempted to introduce testimony of a

police detective for whom Ward worked as an informant. The testimony would have reflected

that other individuals had a motive to burn down Ward's home as retaliation, and that Ward had

expressed fears of such a situation before the fire. The trial court ruled the testimony to be

"hearsay on hearsay" and therefore inadmissible. The Supreme Court of Pennsylvania held that

although some of the testimony would be hearsay, the major elements of it were admissible and

thus, error to exclude that witness. It explained that "[a]n accused has a fundamental right to

present evidence *so long as the evidence is relevant and not excluded by an established*

*evidentiary rule.*" *Id.* at 797, *citing Chambers, supra.* (emphasis added).

21

The Superior Court of Pennsylvania later reiterated that statement: "[O]ur Pennsylvania Supreme Court has observed that an accused exercising his or her right to present evidence 'must comply with established rules of procedure and evidence.'" *Commonwealth v. Tielsch*, 934 A.2d 81, 90 (Pa. Super. 2007), *quoting Commonwealth v. Bracero*, 528 A.2d 936, 939 (Pa. 1987). In *Tielsch*, the appellant sought to introduce testimony that an individual allegedly made to his ex-girlfriend in which he said that he was riding in a vehicle when another passenger shot someone outside of the car as well as various statements allegedly made by the individual to the police about the shooting. The trial court ruled that the proposed testimony constituted inadmissible hearsay, and on appeal Tielsch argued that it "was admissible pursuant to what has been called the 'due process exception' to the hearsay rule." *Id.* at 90.

Like *Chambers* and *Green*, the issue in *Tielsch* centered on purported confessions by a third party. The Superior Court of Pennsylvania explained that "unlike the situations in *Chambers* and *Green* . . . there were no *assurances of reliability* to buttress the out of court statements," and found that the trial court did not abuse its discretion in precluding those hearsay statements. *Id.* at 91.

This Court finds that *Commonwealth v. Franklin*, 580 A.2d 25 (Pa. Super. 1990) is controlling herein. In 1980, a jury found Franklin guilty of first degree murder, possession of instruments of crime generally, criminal conspiracy, and aggravated assault. In 1986, he filed a Post Conviction Hearing Act[19] petition; it was denied, and Franklin appealed to the Superior Court of Pennsylvania. One of his claims was "that he was deprived of due process of law because he was prevented from introducing evidence vital to his defense." *Id.* at 30. A surviving victim had been questioned the morning after the shooting, and the victim named two assailants. When shown a photo of Franklin, the victim denied that Franklin was one of his shooters. Trial

_____

[19] The Post Conviction Hearing Act is the predecessor to the Post Conviction Relief Act.

22

counsel attempted to use the victim as a defense witness at trial, but the victim's attorney informed trial counsel that given the circumstances of the events leading to Franklin being charged, he had to advise the victim to not testify. Apparently the victim fled the jurisdiction at the time of trial, and trial counsel could not locate him. Since he was unavailable at the time of trial, Franklin attempted to introduce the victim's statement but the trial court excluded it as inadmissible hearsay. The Superior Court of Pennsylvania compared the facts of Franklin's case to *Chambers*:

> We disagree with appellant's contention that the hearsay statement he attempted to introduce at trial was made under conditions of reliability similar to those present in *Chambers v. Mississippi, supra.* The ruling in *Chambers* is readily distinguishable from the instant case upon consideration of several particulars: although [the victim's] statement was made shortly after the shooting in question, the statement itself was not against [the victim's] penal interest, it was not uttered spontaneously to a "close acquaintance," and it was not spontaneously repeated on multiple occasions. Finally, for reasons previously discussed, [the victim] was not present in the courtroom, was not available to the prosecution for cross-examination, and his demeanor was not subject to evaluation by the jury. Under the facts presented by appellant's case, we have no difficulty in holding that *Chambers v. Mississippi* does not compel us to overturn the ruling of the trial court on the admissibility of [the victim's] hearsay statement. The indicia of reliability which the *Chambers* Court emphasized as a necessity before requiring the admission of the hearsay statement simply are not present in the instant case. As the record contains no indication that the lower court committed abuse of discretion or error of law in its ruling, we find that appellant is not entitled to relief on this claim.

*Id.* at 32. The Court affirmed the decision of the trial court.

This Court notes, Attorney Alterio testified that he had a reasonable basis for not arguing that the statement was admissible under the "due process exception to the hearsay rule."

> In light of the Judge's ruling on the Motion in Limine which basically granted me everything except Mr. Mark's name, I did not see the need... I didn't see then and don't see now the need to actually specifically identify Mr. Mark. The jury was presented with the evidence that another individual was identified, that the other individual had no connection with Mr. Fisher. All of the other individual [sic] that were associated with Mr. Marks had no connection with Mr. Fisher, that this

23

other individual had been charged. So, the actual identification of Mr. Marks by name, I didn't think was necessary.

(N.T. 2/6/13, 36:6-17).

Clearly the Defendant has failed to establish that Mr. Dale's out-of-court identification of Michael Marks was admissible pursuant the "due process" exception to the hearsay rule. This argument is unsupported under state or federal law, and therefore this claim has no merit. Additionally, Mr. Fisher has failed to prove the third prong of the *Pierce* test in that he has not shown that had Attorney Alterio made the argument the testimony would have been admitted. The Defendant was not prejudiced and has not met any of the requirements of the *Pierce* test, and this claim fails.

**Claim #8:**

The Defendant argues that: "Mr. Fisher was denied effective assistance of counsel when Trial Counsel failed to object to misleading questions by the Assistant District Attorney when he asked Mr. Fisher's alibi witnesses about their failure to immediately notify law enforcement officers they were with Mr. Fisher on the date of the crime." In his brief, he claimed that Attorney Alterio "allowed the Commonwealth to improperly discredit the most important challenge Mr. Fisher had against the charges and providing his innocence," and therefore "Mr. Fisher was greatly prejudiced in that the jury was left with the false impression that Mr. Fisher's alibi was a recent fabrication." (*Brief in Support of Motion for Post Conviction Relief*, Page 53-54).

On cross-examination, the Commonwealth questioned Vicki Fisher regarding the Defendant's alibi.

Q:      You're aware that there was a home invasion in this case back on January 29, 2003.

24

A: Yes, sir.

Q: You're also aware of the fact that a criminal information was filed about a year and a half ago charging your son in a criminal complaint with homicide and other crimes that are before the Court today. Are you aware of that, too?

A: Yes, sir.

Q: Can we agree that we are now in the trial today some four years after the homicide and a year and a half after your son was criminally charged, right, we're here today?

A: Yes, sir.

Q: Can we also agree that all these years later you did not come forward and report that you had an alibi for your son to the police, to the Pennsylvania state police, to the detective in this case, Mr. Carso, until two weeks ago?

A: Sir, let me explain that I was not aware that my son was associated with this case up until whenever the officers came to Arkansas. I don't know anything – I didn't know there was anything like that. I sat down and I racked my brains and I racked my brains. I wasn't even for sure that this was the same time myself until we actually found the clip – the microfilm that states that it's that day.

Q: But, ma'am, you've testified just previously under oath that you were aware of years ago when the police came down to Texarkana, Arkansas years ago in this investigation, and you were aware your son was criminally charged, were you not?

A: I'm sorry, sir, I misunderstood that question.

Q: You were aware of that?

25

A: I didn't exactly understand.

Q: Are you aware that when the police came down to Texarkana, Arkansas, and after all these years, you didn't come forward with your alibi defense and call the police and say, hey, you have the wrong man, until two weeks ago?

A: No, sir. That's not fact. We wasn't aware my son was charged with this until, what was it, 2006 or 2007, and we located this information earlier and gave it to our – to his attorney.

Q: You didn't come forward in 2006, and you didn't come forward in 2007. Is that fair to say?

A: I didn't find the information until later that winter.

Q: In fact, I think what happened is when Detective Carso called you on August 22 after you were given notice for the first time around that time of your alibi of defense, Detective Carso called you –

A: Yes.

Q: Do you remember talking to him on the phone?

A: Yes, sir.

Q: Do you remember telling him Vicki Fisher says that she was not going to say anything to me and that she did not know who I was or even if I was a police officer? She said that she did not know why I was calling her about this and that she would say what she had to say when the prosecuting attorney asks her questions in court. She continued to say that even if I did tell you anything, it would not be the same story that I would tell the Court. Is that what you told him?

A:    No, sir. That was not my conversation with that gentleman.

Q:    You remember the phone call, don't you?

A:    Yes, sir, I do.

(T.T., 9/11/08, 29-32).

The Commonwealth also cross-examined the Defendant's sister-in-law, Karyl Fisher, about the alibi.

Q:    Let me ask you this. Are you aware of that fact that Mark Fisher – This home invasion took place on January 29, 2003, isn't that right, you're aware of that?

A:    Yeah, now, yeah.

Q:    You were aware over a year and a half ago a Criminal Complaint was filed against Mark Fisher charging him with these crimes; you were aware of that?

A:    Well, yeah.

Q:    Sure, you were. Can we agree that you were aware of the fact that a trial was coming up and there was notice of the trial and you were going to be a witness; right?

A:    Well, what do you mean, like –

Q:    You were aware a year and a half ago that there were criminal charges against Mark Fisher?

A:    Uh-huh.

Q:    Right?

A:    Uh-huh.

Q:     And eventually you were aware of the fact he was involved in criminal proceedings here in Western Pennsylvania, specifically Washington County; right?

A:     Yes.

Q:     From a year and a half ago until today can we also agree that you never called the police to tell them that you had what they called an alibi?

A:     Well, I didn't know that the – you know, it was the exact day until, you know, they was looking – she brought it to my attention and asked if I remembered when that occurred, and I didn't. And then further they got the article, and it was the day, and I was glad to come up here and –

Q:     Can we agree that when you learned you were going to be testifying about an alibi quite awhile ago, you never called the police and told them that you had important information; right? Did you ever call the police?

A:     No. Why would I have to?

Q:     You never called the detective who worked on this case, Detective Carso? You never told him, did you, that you had an alibi?

A:     Well, I did not get – I'm just knowing what's going on now. I never pried into any of this. I voluntarily said that I would come and give – and say what is the truth, and that is what I'm doing.

Q:     I understand, but you never called Detective Carso with this valuable information; right?

A:     I didn't know I was supposed to.

Q:     You never called the Pennsylvania State Police; is that right?

28

A: I never knew I was supposed to. No, I did not.

(*Id.* 43-46).

Pennsylvania courts have addressed the issue of misleading questions. "A question which assumes a fact that may be in controversy may become improper on cross-examination, because it may by implication put into the mouth of an unwilling witness, a statement which he never intended to make, and thus incorrectly attribute to him testimony which is not his." *Di Bona v. Philadelphia Transportation Co.*, 51 A.2d 768, 771 (Pa. 1947). "On cross-examination leading questions may be asked but misleading questions may not be asked. Setting verbal traps for a witness is not a legitimate branch of the art of cross-examination." *Commonwealth v. Ross*, 152 A.2d 778 (Pa. Super. 1959), *citing Di Bona, supra.*

However, the Commonwealth's questions at trial were not misleading. In *Commonwealth v. Rodgers*, 372 A.2d 771 (1977), the Supreme Court of Pennsylvania examined a similar claim:

> [A]fter the prosecution rested, appellant put on an alibi defense. Five witnesses testified that they were with appellant at a party in honor of his birthday at the time the crime was committed. Over defense objection, the prosecutor asked two of these witnesses, during cross-examination, whether they had ever gone to the police to tell them that appellant was at a party with them on the night Frank Geter was killed. Appellant asserts that these questions were improper because the law imposes no duty upon a person who may become an alibi witness to come forward to the police. This contention is without merit. The line of questioning went to the witnesses' credibility, a proper area of cross-examination.
>
> The record indicates that the two witnesses, who were appellant's sisters, were aware prior to appellant's arrest that the police were looking for him. After his arrest, they learned that the time of the crime coincided with the alleged birthday party. The thrust of the challenged cross-examination was that if appellant had been with these witnesses at the time of the murder, they might have informed the police that appellant could not possibly have committed the crime. That they had no duty to come forward does not render the question improper or irrelevant. Their failure to come forward could support an inference that their alibi testimony was fabricated for trial. Thus, these questions on cross-examination were permissible because they tended to impeach the witnesses' credibility. See J.

29

McCormick, Evidence § 29 (2d ed. 1972); 2 G. Henry, Pennsylvania Evidence § 815 (1953). Appellant was free to develop the reasons for their inaction on redirect examination. The determination whether these witnesses were credible was for the jury.

The trial court correctly permitted this line of cross-examination.

*Id.* at 782.

"[T]he very purpose of cross-examination is to undermine the testimony introduced by the opposing side on direct examination." *Commonwealth v. Ragan*, 645 A.2d 811, 825 (Pa. 1994). At the PCRA hearing, Attorney Alterio explained that he did not "believe either question is misleading or prejudicial," and that "the questions go credibility [sic] of the witness' testimony." (N.T. 2/6/13, 40:8-10). He is correct, and this claim has no merit.

**Claim #9:**

The Defendant argues that: "Mr. Fisher was denied effective assistance of counsel when Trial Counsel failed to object when the Assistant District Attorney cross examined alibi witness, Karyl Fisher about her conviction for hindering the apprehension of a criminal in that the offense was not crimen falsi." The Commonwealth questioned her about the prior conviction after probing her about her knowledge of the Defendant's whereabouts at the time of the commission of the crimes and her failure to tell Pennsylvania State Police of the alibi information.

Q: Ma'am, can we agree that back in 2005 you were convicted of Hindering the Apprehension of a Prosecution (sic) or Harboring a Criminal in Texarkana, Arkansas; right?

A: Yeah.

Q: In fact, the person you were harboring was your husband James who the police were looking for who had five warrants, one felony warrant and four misdemeanor warrants. They came to the house, and you lied to the police. You

30

told them that he was not in the house, and you were later charged with a crime; isn't that right?

A:   I was charged, but I did not tell them – I told them they could not come in my home unless they had a search warrant because my children were there.

Q:   In other words, you're denying that you told the police initially when they came there that your husband was not in the house and they had search warrants for him, right – or warrants for his arrest?

A:   They knew he was there. I would not let them in because my children was there and they were scared. I told them if they had a search warrant they could come in there and they could take him.

Q:   But, ma'am, you later pled guilty to a crime?

A:   Yes, I did.

Q:   And the crime was Hindering the Apprehension or Harboring a Criminal and that you lied, right? And you said you were lying to protect your husband because you loved him.

A:   No, that is not how it was.

Q:   Thank you, ma'am. No further questions.

(T.T., 9/11/08, 46-47).

Pennsylvania Rules of Evidence provide that, "For the purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime, whether by verdict or by plea of guilty or *nolo contendere,* must be admitted if it involved dishonesty or false statement." Pa.R.E. 609(a).

> Where the date of conviction or last date of confinement is within ten years of the trial, evidence of the conviction of a *crimen falsi* is *per se* admissible. If more

31

than ten years have elapsed, the evidence may be used only after written notice and the trial judge's determination that its probative value substantially outweighs its prejudicial effect.

Pa.R.E. 609, Comment. Additionally, "the clear language of the rule, as promulgated by our Supreme Court, does not differentiate between a witness and a defendant witness. . ." *Commonwealth v. Howard*, 823 A.2d 911, 913 (Pa. Super. 2003).

At the PCRA hearing, Attorney Alterio explained that although Hindering the Apprehension is not a *crimen falsi* crime, "by case law if a crime that you have been convicted of involves either oral or written statements that contain falsehood, those crimes are then considered to be *crimen falsi* crimes and are admissible. So, the Hindering Apprehension charge would be because it involved her lying about her husband." (N.T. 2/6/13, 42:1-6). He clarified that it was his understanding "that she had lied or made a false statement to the Arkansas police concerning her husband" (*Id.* at 7-10), and the crime would be comparable to Pennsylvania's Title 18, Section 4904 Unsworn Falsifications. (*Id.* at 11-13). Attorney Alterio referred to *Commonwealth v. Vitale*, 664 A.2d 999 (1995), in which the Superior Court of Pennsylvania explained: "[W]e have indicated that even if a crime would not in and of itself be *crimen falsi*, we would consider it as such if it was committed in part through the use of false written or oral statements. *Id.* at 1003 (citations omitted).

The Defendant has failed to prove that counsel had no reasonable strategic basis for his inaction in this instance, and he was not prejudiced by trial counsel's failure to object as this impeachment was proper. Finally, this last claim has no merit and fails. Accordingly, this Court enters the following:

## ORDER

AND NOW, this 25th day of November, 2013, it is hereby ORDERED, ADJUDGED and DECREED that the Defendant's Petition for Post-Conviction Collateral Relief is DENIED. This Court finds that the grounds for challenge presented in the Defendant's Petition are patently frivolous, not supported in law or in fact, and no genuine issues of material fact entitle the Defendant to relief, and no purpose would be served by any further proceeding.

Pursuant to Pa.R.Crim.P. 907(4), the Defendant is hereby advised that this is a final order from which an appeal may be filed with the Superior Court of Pennsylvania. The Defendant is further advised that such an appeal must be filed within thirty (30) days of the date of this Order.

BY THE COURT:

DEBBIE O'DELL-SENECA, PRESIDENT JUDGE

33